CLARKE & SIMMONS, INC. v. H. V. RULE.[1]

May 29, 1924.

No. 23,829.

**Evidence insufficient to require submission to jury of questions of fraud in obtaining notes.**

The maker's defense to an action on his notes was fraud on the part of the payee in obtaining them. The evidence offered to establish the defense was not sufficient to justify its submission to the jury.

Action in the district court for Hennepin county to recover $10,-000 on promissory notes. The case was tried before Molyneaux, J., who granted plaintiff's motion to direct a verdict in its favor. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*George A. Lewis*, for appellant.

*E. E. Eder*, for respondent.

LEES, C.

Action to recover on three promissory notes aggregating $10,000, given by appellant to W. H. McGrath and indorsed to the respondent. The defense was want of consideration and alleged misrepresentations which induced appellant to execute the notes. The court directed a verdict in respondent's favor. The appeal is from an order denying a new trial.

At the opening of the trial the respondent waived any rights it might assert as a holder in due course. Appellant was allowed to make any defense he might have made to an action brought by McGrath himself.

Appellant and A. L. Rule were sons of James Rule of Mason City, Iowa. The father died November 28, 1907, leaving a will in which his two sons and their mother were named as trustees to receive all the income from the testator's property and divide the

[1]Reported in 199 N. W. 89.

net receipts annually among the three, each to receive one-third thereof. The will was admitted to probate on February 3, 1908. A codicil, revoking appellant's appointment as one of the trustees and excluding him from sharing in the income from the property, was executed February 28, 1907. The codicil was not admitted to probate with the will. Mrs. Rule died on January 3, 1906. On March 17 of that year, on the petition of A. L. Rule, the codicil was admitted to probate.

Appellant was a married man but, owing to disagreements with his wife, they had separated. He took up his abode in Minneapolis and employed McGrath as his attorney to secure for him, if possible, some portion of his father's estate. A contract of employment was drawn and executed on September 15, 1916. By its terms McGrath was to receive, as compensation for his services, 40 per cent of any money or property, or one-third of any income from the estate, which he obtained for appellant by settlement or by legal proceedings.

McGrath retained Iowa counsel and an action was commenced against A. L. Rule and others to set aside the probate of the codicil on the ground that James Rule had been induced to execute it by the exercise of fraud and undue influence. The action came on for trial in the district court of Cerro Gordo county, Iowa, and, after a jury was impaneled, a settlement was agreed upon, the terms of which are embodied in a stipulation signed by the parties on May 13, 1918. The stipulation provided for the transfer of a one-half interest in the James Rule estate to Allen F. Beck, as trustee for appellant, and for the conveyance to Beck of certain property in Mason City, subject to an option to A. L. Rule to purchase the property for $20,000, of which $10,000 was to be paid to appellant's attorneys as their fees. Immediately after the stipulation was signed A. L. Rule purchased the property and made the $10,000 payment to the attorneys. On the following day the notes in question were executed.

In substance appellant pleaded as his defense that McGrath had agreed with A. L. Rule to receive the $10,000 cash payment in full satisfaction of all claims for attorneys' fees; that, without inform-

ing appellant of that fact, McGrath falsely represented that the money was to go to the Iowa attorneys and that he would not allow the pending settlement to be completed unless appellant executed the notes.

In support of this defense, A. L. Rule testified that the first draft of the stipulation for settlement provided for the conveyance to appellant's attorneys of the property covered by the option; that the value of the property was $20,000, the amount claimed by the attorneys as their fees; that he refused to sign the stipulation because he thought the claim was disproportionate to the value of the share in his father's estate appellant was to receive; that the negotiations for a settlement were then suspended; that they were renewed a little later, the outcome being the execution of the stipulation and the payment of $10,000 as attorneys' fees.

Appellant testified that he remained at his hotel in Mason City and was not present at any of the conferences which preceded the settlement; that McGrath told him of the payment of $10,000 made by A. L. Rule, saying it would not cover attorney's fees and expenses and that before he (McGrath) "would allow the settlement to go through" he would have to have $10,000 more; that McGrath did not tell him that A. L. Rule had refused to pay more than $10,000 for attorneys' fees, and that, if he had known it, he would not have executed the notes. He admitted that he learned all the facts in the early part of 1921 and thereafter handed respondent's attorney a check for a year's interest on the notes, which was not accepted. He testified that he gave the notes because McGrath told him he was entitled to receive $32,500 under his contract of employment, represented that 40 per cent of the value of the property obtained by the settlement came to that sum, but finally offered to reduce his claim to $20,000, and, in the belief that unless he accepted the offer McGrath would not allow the settlement to be completed, he executed the notes.

McGrath and one of the attorneys associated with him contradicted the statements of appellant and his brother with respect to the purpose of the $10,000 payment, and McGrath denied the misrepresentations with which he was charged by appellant.

Accepting the testimony of appellant and his brother at its face value, it amounts to this: There was but one fact connected with the negotiations preceding the settlement which was not known to appellant when he gaves the notes; he was not informed and did not know that his brother had refused to consent to the payment of more than $10,000 as fees to appellant's attorneys. The stipulation for settlement, in referring to the property purchased by A. L. Rule, provides that the trustee may mortgage the property for $10,000 to pay appellant's attorneys but, if the property is purchased under the option, payment is to be made as follows: "Ten thousaand dollars cash to H. V. Rule's attorneys as their attorneys' fees" and $10,000 by the execution of a mortgage on the property to the trustees. Aside from this, there is nothing in the stipulation indicating that $10,000 was all the attorneys were to receive.

McGrath testified that the settlement brought to appellant an interest in his father's estate of the value of $98,000. This is denied, but it is clear that appellant did acquire a substantial interest in a considerable estate as the result of the efforts of his attorneys. His right to share in the estate was cut off by the codicil. The time to contest the codicil's admission to probate had gone by. There is evidence indicating that his misconduct in his domestic relations had incensed A. L. Rule, who used the codicil to deprive appellant of his share in the estate in order to give his wife the benefit of the income from it. The possibility of a recovery was highly uncertain. Appellant was without means and could pay his attorneys nothing unless they were successful. He was a banker's son, with considerable business experience. There is no claim that he did not know exactly what he was doing when he entered into the contract with McGrath or when he assented to the settlement of the litigation. Under his contract of employment, McGrath had the right to claim 40 per cent of the value of the property appellant obtained. The claim was unliquidated; the amount depended upon the value of the property. McGrath offered to take $20,000 in full satisfaction of his claim and appellant accepted the offer. Possibly 40 per cent of the value of the property was less than that, but this was a matter of opinion. Appellant knew as

much about the property as his attorneys. We are unable to discover any evidence of fraud on their part.

A. L. Rule's effort to reduce the fees appellant was to pay the attorneys was commendable, but it was no affair of his to settle with them. If the $10,000 paid was all they were to receive, it was easy to state that the payment was made in full satisfaction of their claims, but the stipulation is silent on that point. A. L. Rule is a lawyer and knew what the stipulation should contain if $10,000 was to fully satisfy the claim of his brother's attorneys. The record indicates that the real reason for the defense interposed is that on second thought appellant repented of his bargain. It is a significant fact that, after he knew everything he says he ought to have been told before he was asked to sign the notes, he gave his check to pay the interest due on them. This was an act inconsistent with a belief that he had been imposed upon, and it may be that it would be a waiver of the fraud, if any there had been.

Order affirmed.